UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | Case No. 2:13-cv-00397-JVB |
| | ) | (arising from 2:11-cr-108-JVB-PRC) |
| TITUS FINNELL | ) | |

**OPINION AND ORDER**

Defendant Titus Finnell moves for relief under 28 U.S.C. § 2255. This Court previously granted his accompanying motions for a hearing and for appointment of counsel. For the reasons below, this Court denies Defendant's motion for § 2255 relief.

**A.     Overview of the Case**

On July 21, 2011, a grand jury indicted Defendant on four counts related to his involvement in a conspiracy to rob a false stash house.[1] (DE 11.) As part of the plan, an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") posed as a disgruntled drug courier of a fictional kingpin who dealt in cocaine. (DE 124 at 5.) The agent discussed with an individual named Lee Gilyard a plan to rob the kingpin's stash house, which would contain "at least ten kilos of cocaine," but would be defended by two armed guards. (*Id*.) Gilyard told the agent that he could sell the cocaine and that he was willing to participate. (*Id*.) Later, co-defendant Terence Peterson and another individual were brought on board. (*Id*.) Peterson likewise told the agent that he could sell the cocaine and that "he was born and raised for this [stuff]." (*Id*. at 6.) Throughout the following week, Peterson assured the agent that he knew people who would be willing to participate in the robbery. (*Id*.) Eventually, Defendant entered

---
[1] A stash house is a place where drugs are stored.

1

the picture. (*Id*. at 7.) He indicated that this was not his first rodeo. (*Id*.) Another week later, the agent offered Peterson a chance to back out, which he declined. (*Id*.) He also mentioned that Defendant was "ready" and that Defendant "ke[pt] calling." (*Id*.)

On the day of the robbery, Peterson, Defendant, and two youths joined the agent for final preparations. (*Id*.) Defendant "brought with him black bandanas, shirts that were marked 'Police,' and shotgun shells." (*Id*.) The agent then led the group to a takedown location, where they were all taken into custody. (*Id*.) A later search of Defendant's residence uncovered two shotguns. (*Id*. at 8.) Guns were also found in Peterson's house. (*Id*.)

This Court held a hearing on Defendant's § 2255 motion. (DE 230.) The parties did not present evidence, instead electing to stand on the briefs they have submitted up to this point. (*Id*.)

**B.     Standard of Review**

Defendant waived the right to challenge his conviction and sentence "on any ground . . . [other than] ineffective assistance of counsel relat[ing] directly to this waiver or its negotiation" in his plea agreement regarding count two.[2] (DE 96 at 4.) His decision to plead without a plea agreement to counts three and four carries similar consequences. *See United States v. Nunez*, 958 F.2d 196, 200 (7th Cir. 1992) ("[The defendant's] plea of guilty [without an agreement] waives any defense he might have offered at trial.") (holding that the defendant waived the defense of entrapment).

The Sixth Amendment grants to criminal defendants the right to counsel. U.S. Const. amend. VI. The Supreme Court clarified that a defendant can be denied this right when his counsel renders ineffective assistance. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). To

---

[2] The government dismissed count one as part of the plea agreement. (*See* DE 134.)

establish ineffective assistance, the defendant must show deficiency—"that counsel's representation fell below an objective standard of reasonableness"—and prejudice—"that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. In the context of guilty pleas, the "difference" must be that the defendant "would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985.) "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Id.* Because hindsight is 20/20, the defendant cannot simply nitpick and second-guess counsel's performance. *Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight."). To succeed, he must show that foresight should have been 20/20 as well.

**C.     Analysis**

Defendant's pro se § 2255 motion raised several challenges related to the advice he received that led him to plead guilty. Mr. Bosch, in the lead-up to the § 2255 hearing, focused principally on Defendant's allegations that his attorneys paid no attention to the possible defenses of entrapment, racial profiling, and selective prosecution.[3] However, as the government correctly points out, Defendant's arguments "must be viewed entirely through the lens of ineffective assistance of counsel." (DE 205 at 12.) Thus, Defendant must show that (1) his defenses have merit, (2) a reasonable investigation, at the time, would have uncovered that merit, and (3) Defendant would have proceeded to trial had he been informed of that merit. *Hill*, 474

---

[3] This Court has reviewed Defendant's additional allegations and find that they lack merit. (*See* DE 178) (granting a hearing but noting that "it is clear that not all of [Defendant's] arguments have possible merit").

U.S. at 59–60. Here, Defendant has failed to prove that his defenses have merit.

For starters, Defendant's entrapment defense suffers from a fatal flaw: the evidence indicates that Peterson, not the government, recruited Defendant to the plot. (*See* DE 124 at 6.) Thus, even if this Court were to presume that Defendant was entrapped, he would need to show that Peterson was *also* entrapped. *See United States v. Conley*, 875 F.3d 391, 402. ("[T]he defense of derivative entrapment can only be applied to a defendant who was entrapped through a first entrapee."). Because Defendant has produced no evidence to show entrapment as to Peterson, Defendant cannot show that he himself was entrapped.

As for racial profiling and selective prosecution, Defendant, in his pre-hearing briefs and status reports, relied heavily on an expert report by Dr. Jeffrey Fagan, who conducted a statistical study on whether defendants in a case in the Northern District of Illinois were subject to selective prosecution. (*See* DE 209.) Like here, the defendants there conspired to rob a false stash house. *United States v. Brown*, 299 F. Supp. 3d 976, 986 (N.D. Ill. 2018). The Honorable Rubén Castillo, in a thorough and well-reasoned opinion, rejected the Fagan report and, consequently, the defendants' selective prosecution argument. *Id*. at 1013. This Court finds Judge Castillo's logic persuasive and likewise rejects the Fagan report.

This leaves Defendant with the notion that "the United States Attorney's Office for the Northern District of Indiana has prosecuted only 4 stash house sting cases . . . [that] produced 18 defendants, all of whom were black." (DE 201 at 4.) However, Defendant must go further and show that the United States Attorney's Office (regarding selective prosecution) or the ATF (regarding racial profiling) could have prosecuted or ensnared non-black suspects but chose not to. *See Jarrett v. United States*, 822 F.2d 1438, 1443 (7th Cir. 1987) ("[T]he defendant must establish . . . that he was singled out for prosecution while others similarly situated were not

prosecuted."); *United States v. Barlow*, 301 F.3d 1007, 1012 (7th Cir. 2002) ("Barlow needed to present evidence that the DEA agents observed whites engaging in the same behavior as Barlow . . . but chose not to approach them."). He has failed to meet this burden.

Having denied Defendant's § 2255 motion, this Court must now decide whether to issue a certificate of appealability under Rule 11(a) of the Rules Governing Section 2255 Proceedings. To be entitled to a certificate of appealability, Defendant must "ma[ke] a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and "must demonstrate that reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, given the lack of evidence before this Court, no reasonable jurist would find that Defendant met his burden. This Court thus declines to issue a certificate of appealability.

**D.     Conclusion**

Defendant has not provided enough evidence to meet his burden of proof. Accordingly, Defendant's motion for § 2255 relief is DENIED. Additionally, this Court DENIES a certificate of appealability.

SO ORDERED on October 4, 2019.

      S/ Joseph S. Van Bokkelen
      JOSEPH S. VAN BOKKELEN
      UNITED STATES DISTRICT JUDGE